MARY KATE SULLIVAN (State Bar No. 180203)
mks@severson.com
ERIK KEMP (State Bar No. 246196)
ek@severson.com
TARA MOHSENI (State Bar No. 313080)
tm@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendant
WELLS FARGO BANK, N.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLENE JEAN MOSLEY, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO BANK, N.A.;<br>NORTHWEST TRUSTEE SERVICES, INC.;<br>and DOES 1 through 20, inclusive,<br><br>Defendants. | State Case No. RG17869736<br><br>**DEFENDANT WELLS FARGO'S NOTICE OF REMOVAL TO FEDERAL COURT PURSUANT TO 28 U.S.C. 1332 AND 1441(b)**<br>**[DIVERSITY JURISDICTION]**<br><br>Action Filed:    July 31, 2017 |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE**

**NORTHERN DISTRICT OF CALIFORNIA, PLAINTIFF AND ALL OTHER**

**INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, defendant

WELLS FARGO BANK, N.A. ("Wells Fargo") hereby removes the above-captioned action from

the Superior Court of the State of California, in and for the County of Alameda, to the United

States District Court, Northern District of California.  Defendant alleges it is entitled to remove the

action pursuant to diversity jurisdiction, 28 U.S.C. §§ 1332, as follows:

1.      Plaintiff Marlene Jean Mosley ("Plaintiff") filed a civil action against Wells Fargo

1   in the Superior Court of Alameda, California, on July 31, 2017, entitled *Marlene Jean Mosley v.*

2   *Wells Fargo Bank, N.A.; Northwest Trustee Services, Inc.; and Does 1 through 20, inclusive,*

3   bearing Alameda Superior Court case number RG17869736 (the "State Court Action"). The

4   Complaint asserts nine causes of action against Wells Fargo : 1) Violation of California Civil

5   Code Section 2923.55; 2) Violation of California Civil Code Section 2923.6; 3) Violation of

6   California Civil Code Section 2923.7; 4) Violation of California Civil Code Section 2924.12; 5)

7   Breach of Contract; 6) Breach of the Covenant of Good Faith and Fair Dealing; 7) Negligence; 8)

8   Negligent Infliction of Emotional Distress; and 9) Violation of California Business and

9   Professions Code section 17200.  Defendant was served with the Summons and Complaint on

10  August 1, 2017.

11         2.      This notice of removal is timely under 28 U.S.C. § 1446(b) and Fed. R. Civ. P. 6(a)

12  because it is being filed within 30 days of receipt of service of the Summons and Complaint.

13         3.      Wells Fargo has not yet filed an answer or otherwise responded to Plaintiff's

14  Complaint in the State Court Action.

15         4.      Defendant is authorized to represent that defendant Northwest Trustee Services,

16  Inc. joins in and consents to this removal.  Accordingly, all defendants named in the complaint

17  join in the removal of this action.

18         5.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 84(b) and 1441(a) because

19  the United States District Court for the Northern District of California is the federal judicial

20  district and division embracing the Superior Court of California in and for the County of Alameda,

21  where the State Court Action was originally filed.  Pursuant to Civil Local Rule 3-2(d),

22  assignment to the San Francisco Division or Oakland Division of the Northern District of

23  California is proper because this is alleged to be a civil action arising in the county of Alameda.

24                          **I. DIVERSITY JURISDICTION**

25         6.      This Court has jurisdiction of this case under 28 U.S.C. § 1332 and it is an action

26  that may be removed to this Court pursuant to 28 U.S.C. § 1441(b) because it is a civil action

27  between citizens of different states and involves an amount in controversy that exceeds the sum or

28  value of $75,000, exclusive of costs and interest.

## II.  COMPLETE DIVERSITY OF CITIZENSHIP

7.    The citizenship of the parties to this action is completely diverse.

8.    Plaintiff is a citizen of the State of California (based on domicile), as she alleged in the Complaint that she resides in Alameda County, California. Complaint ¶ 1. A party's residence is 'prima facie' evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994); *see also Bradley Min. Co. v. Boice*, 194 F.2d 80, 84 (9th Cir. 1952) ("Proof of residence in a state is usually thought prima facie evidence of domicile sufficient to shift the burden of proof"), cert. denied, 346 U.S. 874 (1953).

9.    Wells Fargo is not a citizen of California.  Wells Fargo is a national banking association Wells Fargo is a citizen of the State of South Dakota. *See* 287 U.S.C. § 1348; *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006) ("[A] national bank, for § 1348 purposes, is a citizen of the State in which its main office, as set forth in its articles of association, is located."). Wells Fargo is, and at all relevant times was, a citizen of the State of South Dakota, with its main office in Sioux Falls, South Dakota as set forth in its articles of association. *See Rouse v. Wachovia Mortgage,* 747 F.3d 707, 715 (9th Cir. 2014) (holding that "Wells Fargo is a citizen only of South Dakota, where its main office is located").  Accordingly, Wells Fargo is not and, at the time plaintiff filed her complaint, was not, a citizen of the state of California, but of the state of South Dakota.

10.    Northwest Trustee Services is not a citizen of California.  Northwest Trustee Services is a Washington corporation with its principal place of business located in Bellevue, Washington.  Accordingly, Northwest is not and, at the time plaintiff filed her complaint, was not, a citizen of the state of California, but of the state of Washington.

## III.  AMOUNT IN CONTROVERSY

11.    Generally, "[t]he amount in controversy is determined from the allegations or prayer of the complaint." *Schwarzer et al.*, Cal. Prac. Guide Fed. Civ. Proc. Before Trial, Ch. 2C-8, ¶ 2:1782 (2013 ed.) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938), which held that an inability to recover an amount adequate to give the court jurisdiction does not oust the court of jurisdiction).  "In actions seeking declaratory or injunctive relief, it is

DEFENDANT WELLS FARGO'S NOTICE OF REMOVAL TO FEDERAL COURT

1  well established that the amount in controversy is measured by the value of the object of the

2  litigation." *Hunt v. Washington State Apple Advertising Com'n*, 432 U.S. 333, 347 (1977); *Cohn v.*

3  *Petsmart*, 281 F.3d 837, 840 (9th Cir. 2002). In actions challenging the foreclosure of real

4  property by a lender pursuant to a borrower's default on a mortgage loan, the value of the object of

5  litigation is measured by either the value of the underlying loan or the value of the property

6  securing the loan. *Garfinkle v. Wells Fargo Bank*, 483 F.2d 1074, 1076 (9th Cir. 1973); *Chapman*

7  *v. Deutsche Bank Nat. Trust Co.*, 651 F.3d 1039, 1045 n.2 (9th Cir. 2011); *Cabriales v. Nationstar*

8  *Loan Services*, 2010 WL 761081 (N.D. Cal. 2010); *Reyes v. Wells Fargo Bank, N.A.*, 2010 WL

9  2629785 (N.D. Cal. 2010). Additionally, the amount in controversy may be satisfied by all of a

10 plaintiff's claims for damages, including attorney's fees and punitive damages. *See Kroske v. U.S.*

11 *Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005).

12       12.    In her Complaint, Plaintiff seeks to recover general damages, compensatory

13 damages, consequential damages, equitable injunctive, and/or declaratory relief, restitution, and

14 attorneys' fees and costs. Compl., Prayer, ¶¶ 1-4, 6-9. Plaintiff also seeks an injunction on

15 foreclosure proceedings. *Id.*, Prayer, ¶ 5. The Complaint sets forth allegations relating to

16 Plaintiff's ownership interest in residential real property located in Oakland California, including

17 relating to potential nonjudicial foreclosure. The value of this property, Plaintiff's interest in it, the

18 amount of mortgage payments in arrears, and potential damages stemming from any potential

19 nonjudicial foreclosure (assuming merit to Plaintiff's claims) exceeds $75,000.

20                                    **IV.  SERVICE**

21       13.    Pursuant to 28 U.S.C. § 1446(d), Wells Fargo is filing this notice of removal with

22 this Court, will provide written notice of the removal of this action to Plaintiff, and notice thereof

23 will be filed with the Clerk of the Alameda County Superior Court.

24       14.    Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served

25 upon or by Wells Fargo in the State Court Action, including the Complaint are attached hereto as

26 **Exhibit 1**.

27                              **V.  DEMAND FOR JURY TRIAL**

28       15.    Defendant Wells Fargo hereby demands a jury trial in the above-entitled action.

## VI.  PRAYER

WHEREFORE, Wells Fargo prays that the State Court Action be removed from state court to this Court and that this Court assume jurisdiction over the action and determine it on the merits.

DATED:  August 31, 2017

SEVERSON & WERSON
A Professional Corporation


By:  _____
                */s/ Tara Mohseni*
                Tara Mohseni

Attorneys for Defendant WELLS FARGO BANK, N.A.

# Exhibit 1

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

WELLS FARGO BANK, N.A.; NORTHWEST TRUSTEE SERVICES, INC.; and DOES 1 through 20, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

MARLENE JEAN MOSLEY, an individual,

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

ENDORSED
FILED
ALAMEDA COUNTY

JUL 3 1 2017

CLERK OF THE SUPERIOR COURT
By _____

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Rene C. Davidson Courthouse<br>1225 Fallon Street<br>Oakland, CA 94612 | CASE NUMBER:<br>*(Número del Caso):* **RG 17869736** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Michael Avanesian, Esq. JT Legal Group APC 801 N.Brand Blvd. Ste 1120 Glendale CA 91203 818 276 2311

| DATE:<br>*(Fecha)* JUL 3 1 2017 | Clerk, by<br>*(Secretario)* Chad Finke | , Deputy<br>*(Adjunto)* |
|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served
[SEAL]
1. [✓] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [XX] on behalf of *(specify):* WELLS FARGO BANK, N.A.

   under: [XX] CCP 416.10 (corporation)     [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)     [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
   [ ] other *(specify):*
4. [XX] by personal delivery on *(date):* 8/1/17

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Michael Avanesian, Esq. (SBN 278685)<br>JT Legal Group, APC.<br>801 N. Brand Blvd. Ste. 1130<br>Glendale, CA 91203<br>TELEPHONE NO. (818) 276-2311   FAX NO: (818) 839-2306<br>ATTORNEY FOR (Name): Marlene Mosley | ENDORSED<br>FILED<br>ALAMEDA COUNTY<br><br>JUL 31 2017<br><br>CLERK OF THE SUPERIOR COURT<br>By _____ Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Alameda
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS: 1225 Fallon Street
CITY AND ZIP CODE: Oakland, CA 94612
BRANCH NAME: Rene C. Davidson Courthouse

CASE NAME:
Marlene Jean Mosley v. Wells Fargo Bank, N.A., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: RG 17869736 |
|---|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br><br>DEPT: |

Items 1–6 below must be completed (see instructions on page 2).

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [✓] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [✓] monetary b. [✓] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action (specify): 9
5. This case [ ] is [✓] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: July 31, 2017

Michael Avanesian, Esq.
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer
    or wrongful eviction)*
  Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment *(non-
    domestic relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
  above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
    harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified
  above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

1  Michael Avanesian, Esq. (SBN 278685)
   Vartkes Artinian, Esq. (SBN 304009)
2  **JT LEGAL GROUP, APC**
   801 N. Brand Blvd., Suite 1130
3  Glendale, California 91203
   Tel: 818.276.2464 | Fax: 818.446.2162
4  michael@jtlegalgroup.com

5  Attorneys for Plaintiff
   MARLENE JEAN MOSLEY

6

ENDORSED
FILED
ALAMEDA COUNTY

JUL 3 1 2017

CLERK OF THE SUPERIOR COURT
By _____
                              Deputy

7              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8                        **COUNTY OF ALAMEDA**

9   MARLENE JEAN MOSLEY, *an individual*,        Case No.   **RG 17 869 736**

10                Plaintiff,                      COMPLAINT

11  v.                                           (1) **VIOLATION OF CAL.** *CIVIL CODE*
                                                     **2923.55**
12  WELLS FARGO BANK, N.A.;                      (2) **VIOLATION OF CAL.** *CIVIL CODE*
    NORTHWEST TRUSTEE SERVICES,                      **2923.6**
13  INC.; and DOES 1 through 20, inclusive,      (3) **VIOLATION OF CAL.** *CIVIL CODE*
                                                     **2923.7**
14                Defendants.                     (4) **VIOLATION OF CAL.** *CIVIL CODE*
                                                     **2924.12**
15                                               (5) **BREACH OF CONTRACT**
                                                 (6) **BREACH OF THE COVENENANT**
16                                                   **OF GOOD FAITH AND FAIR**
                                                     **DEALING**
17
                                                 (7) **NEGLIGENCE**
18                                               (8) **NEGLIGENT INFLICTION OF**
                                                     **EMOTIONAL DISTRESS**
19                                               (9) **UNFAIR BUSINESS PRACTICES**
20
                                                 **DEMAND FOR JURY TRIAL**
21

22  Plaintiff MARLENE JEAN MOSLEY, an individual, alleges as follows:

23                              **PARTIES**

24       1.    Plaintiff MARLENE JEAN MOSLEY (hereinafter referred to as "Plaintiff") is,

25  and at all times relevant to the facts herein has been, the individual residing in real property

26  commonly known as 2836 Myrtle St., Oakland, CA 94608 ("Subject Property") located in

27  Alameda County, in the State of California.

28

JTLegalGroup
A LAW CORPORATION

2.      Plaintiff is informed and believes and based thereon alleges that Defendant WELLS FRAGO BANK, N.A. ("WELLS FARGO"), is and, at all times relevant to the facts herein, was a business entity bound by the laws of the state of California, doing business in the County of Alameda, state of California.

3.      Plaintiff is informed and believes and based thereon alleges that Defendant NORTHWEST TRUSTEE SERVICES, INC. ("NORTHWEST"), is and, at all times relevant to the facts herein, was a business entity bound by the laws of the state of California, doing business in the County of Alameda, state of California.

4.      The true names and capacities, whether individual, corporate, partnership, associate, or otherwise of Defendants DOES 1 through 20, are unknown to Plaintiff who sues each Defendant by such fictitious names. Plaintiff is informed and believes and based thereon alleges that each of the Defendants designated herein as a fictitiously named Defendant is, and in some manner, was responsible for the events and happenings referred to herein, either contractually or tortuously. When Plaintiff ascertains the true names and capacities of DOES 1 through 20, she will amend this Complaint accordingly.

5.      Plaintiff is informed and believes and based thereon alleges that Defendants and each of them, are, and at all times herein mentioned were, the agents, joint ventures, officers, members, representatives, servants, consultants or employees of their co-defendants, and in committing the acts herein alleged, were acting within the scope of such affiliation with the knowledge, permission, consent or subsequent ratification of their co-defendants.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this matter as the Subject Property is located in the County of Alameda, California.

7.      In addition, this Court has subject matter jurisdiction over the claims raised herein pursuant to *California Constitution* Article VI, section 10, which grants this Court "original jurisdiction in all causes except those given by statute to other trial courts."

JTLegalGroup

8.      Defendants herein purposefully directed their activities to the state of California. As a result, Defendants caused an event or events to occur in California, and more particularly in the County of Alameda, out of which this action arises and which form the basis of this action.

9.      Defendants either are entities duly licensed to do business in the state of California or are entities that regularly conduct business within this judicial district within California.

10.      Venue is proper for this Court since the Subject Property is located in the County of Alameda and because the events or events out of which this action arises and which form the basis for this action arise in the County of Alameda.

## GENERAL FACTUAL ALLEGATIONS

### The Home Affordable Modification Program & "Dual Tracking"

11.      Pursuant to the Emergency Economic Stabilization Act of 2008, the U.S. Department of Treasury implemented the Home Affordable Modification Program ("HAMP") as a program designed to provide affordable mortgage loan modifications and other alternatives to foreclosure for eligible borrowers.  *See* Pub.L. No. 110–343, 122 Stat. 3765 (codified as amended at 12 U.S.C. §§ 5201–5253).  The centerpiece of the statute was the Trouble Asset Relief Program ("TARP"), through which the Secretary of the Department of Treasury was delegated broad powers to mitigate the financial impact of the foreclosure crisis and preserve homeownership. 12 U.S.C. §§ 5201, 5211–5241. Acting under this authority, the Secretary of the Treasury announced the "Making Home Affordable Program" in February 2009. One sub-part of this program is the HAMP. The goal of HAMP is to provide relief to borrowers who have defaulted on their mortgage payments or who are likely to default by reducing mortgage payments to sustainable levels, without discharging any of the underlying debt.

12.      Under HAMP, loan servicers are provided with at least $1,000 incentive payments from the government for each permanent mortgage loan modification completed.  *See Bosque v. CHASE Bank, N.A.* 762 F.Supp.2d 342 (2011), at 347.  Servicers must then use a two-step process for HAMP modification.  Step one includes eligibility criteria, which borrowers must meet in order to qualify for a Trial Period Plan. Step two involves providing the borrower

JTLegalGroup

1  with a Special Forbearance Agreement that outlines the terms of the final modification. (SD 09–

2  01 at 14.)

3      13.    However, lenders have misused the HAMP system, by engaging in what Attorney

4  Generals call, "dual tracking," but for homeowners struggling to avoid foreclosure it may as well

5  be called double-crossing.  Dual tracking refers to what is now a common lender tactic, where

6  while a borrower in default seeks an alternative loss mitigation strategy (e.g. a short sale or a

7  loan modification), the lender quietly continues to pursue foreclosure at the same time.  In the

8  meanwhile, in order to drag out the process, the bank sends ongoing requests to the borrower

9  to send additional documentation (which is often documents the borrower has already provided).

10  As the borrower is lulled into thinking that his or her home will not be taken away, and as the

11  bank continues to send ongoing duplicative requests for more information, the trustee's sale date

12  sneaks upon the borrower and on the sale date the bank immediately swoops in and conducts the

13  trustee's sale in the midst of the loan modification process.

14      14.    As recent as July 11, 2012, Attorney General Kamala D. Harris announced that

15  the Homeowner Bill of Rights, which will protect homeowners and borrowers during the

16  mortgage and foreclosure process, was signed into law today by Governor Edmund G. Brown Jr.

17  The Homeowner Bill of Rights prohibits a series of inherently unfair bank practices that have

18  needlessly forced thousands of Californians, including Plaintiff into defaulting on their

19  mortgages. The law restricts dual-track foreclosures, where a lender forecloses on a borrower

20  despite being in discussions over a loan modification to save the home. It also guarantees

21  struggling homeowners a single point of contact at their lender with knowledge of their loan and

22  direct access to decision makers, and imposes civil penalties on fraudulently signed mortgage

23  documents. In addition, homeowners may require loan servicers to document their right to

24  foreclose.

25      15.    The Homeowner Bill of Rights builds upon and extends reforms first negotiated

26  in the recent national mortgage settlement between 49 states and leading lenders. Attorney

27  General Harris secured up to $18 billion for California homeowners in that Special Forbearance

28  Agreement, and has also built a Mortgage Fraud Strike Force to investigate crime and fraud

1    associated with mortgages and foreclosures. The Homeowner Bill of Rights consists of a series

2    of related bills, including two identical bills that were passed on July 2, 2012 by the state Senate

3    and Assembly: AB 278 (Eng, Feuer, Pérez, Mitchell) and SB 900 (Leno, Evans, Corbett,

4    DeSaulnier, Pavley, Steinberg).

5       16.    On or about April 25, 2007 to finance the Subject Property, Plaintiff obtained a

6    loan from World Savings Bank, FSB ("WORLD SAVINGS") in the amount of $492,000.00. As

7    evidence of the first lien mortgage loan, Plaintiff executed a promissory note ("Note"), and

8    concurrently executed a Deed of Trust ("DOT") as security for the Note.  The DOT was recorded

9    on April 30, 2007, as Document Number 167211 in the Official Records of the County of

10   Alameda Recorder's Office.  The named Lender and Beneficiary in the Deed of Trust was

11   WORLD SAVINGS.  Attached hereto and incorporated herein by reference as **Exhibit A** is a

12   true and correct copy of the DOT.

13      18.    After various assignments of the aforementioned loan secured to the Subject

14   Property, "Wells Fargo Bank, NA, successor by merger to Wachovia Mortgage, FSB, formerly

15   known World Savings Bank, FSB" ("WELLS FARGO") is the beneficiary, and NORTHERN is

16   the foreclosure trustee.  Plaintiff alleges there is an agency relationship among the Defendants --

17   specifically, whereas WELLS FARGO is the principal, and NORTHERN is WELLS FARGO'S

18   agent.

19      19.    On or about April 6, 2017, NORTHWEST, trustee for DOT, had caused to be

20   recorded a Notice of Default and Election to Sell Under Deed of Trust ("NOD") as Document

21   Number 078954 in the Official Records of the County of Alameda Recorder's Office. Attached

22   hereto and incorporated herein by reference as **Exhibit B** is a true and correct copy of the NOD.

23   Following the NOD, on July 13, 2017, a Notice of Trustee's Sale ("NTS") was recorded with

1  the sale date of August 4, 2017, as Document Number 152592 in the Official Records of the

2  County of Alameda Recorder's Office.

3      21.    Plaintiff was never notified of any changes in regards to her loan. Plaintiff's loan

4  has been transferred from one beneficiary to another, without any notification from any parties.

5  Particularly, the first lender for the loan secured by DOT was WORLD SAVINGS.  After

6  WORLD SAVINGS was merged with WELLS FARGO, the loan was subsequently transferred

7  to WELLS FARGO, without giving any notice to Plaintiff.

8

9      22.    Plaintiff is an eighty-four ("84") years old woman who has been living in the

10  Subject Property since she was a young child.  Her living expenses are based on a pension she

11  would obtain each month, the amount of which has eventually been reduced to the lesser amount

12  than her monthly mortgage payments.  On top of her costly life-maintenance medications that

13  she has to pay each month, and all of her other financial hardship that she has suffered for the

14  past year, Plaintiff now has to endure the anxiety and strife of losing her home.

15

16      24.    Before Plaintiff was notified about April NOD, Plaintiff submitted a loan

17  modification application.  Plaintiff's request for loan modification was verbally denied based on

18  various misleading reasons.  Moreover, Plaintiff was told that there was a chance that she might

19  be able to apply later for loan modification and that her application can be approved, and she

20  would get some reprieve and be able to save her home.  Instead, Defendants filed and recorded

21  Notice of Default on April 6, 2017.

22

23      25.    None of the Defendants has contacted the Plaintiff, or attempted to contact the

24  Plaintiff as required under Cal. Civil Code section 2923.55, to discuss her financial situation or

25  options for avoiding foreclosure as required under California Civil Code section 2923.55.

26      26.    As a direct and foreseeable result of the Defendants' violations under California

27

28

JTLegalGroup

Civil Code section 2923.55, Plaintiff has suffered and will continue to suffer substantial irreparable harm, including but not limited to the loss of the Subject Property, the opportunity to pursue foreclosure prevention alternatives she would have qualified for had the Defendants contacted them to discuss alternatives to foreclosure prior to recording the Notice of Default, the cost and expense of the instant pending litigation, continuing emotional distress, and other actual and consequential damages that will be proven on date of trial.

27.     Plaintiff contacted Defendants and requested foreclosure prevention alternatives and assistance in the process of obtaining foreclosure prevention alternatives. Despite Plaintiff's request for assistance with this alternative to foreclosure prevention, Plaintiff was not provided a "Case manager" in compliance with California Code § 2923.7 at any point after January 1, 2013 and to this date.

28.     The single point of contact provided by Defendants was either not willing to, or not provided with the ability to actually help Plaintiff which is tantamount to not having a single point of contact.

29.     As a result, Plaintiff was never given a single point of contact that: (1) Communicated the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options; (2) Coordinated receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application; (3) Had access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative; (4) Ensured that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any; (5) Had access to individuals with the ability and authority to stop foreclosure proceedings when necessary.

30.     As a direct and foreseeable result of the Defendants' violation under California Civil Code sections 2923.7, Plaintiff has suffered and will continue to suffer substantial irreparable harm, including but not limited to the fact that Plaintiff now faces back dues and interest that has accrued to date, the loss of a permanent modification, the loss of the opportunity to pursue other foreclosure prevention options, the loss of the reinstatement amount he paid which included late fees and interest, the cost and expense of the instant pending litigation, and other actual and consequential damages that will be proven on date of trial.

31.     Upon information and belief, and based thereon, Plaintiff alleges that Defendants never intended on offering Plaintiff an opportunity to modify their loan, and forebear on the foreclosure proceedings, and instead filed with the County Recorder's Office all necessary procedural documents to pursue a non-judicial foreclosure sale.

32.     Plaintiff has suffered extreme emotional distress due the actions and inactions of the Defendants described above. Defendants have abused their rights as a lender, have engaged in unfair business practices, have breached several promises, as well as fiduciary duties to Plaintiff and made fraudulent misrepresentation.

33.     The Defendants, in breach of their promise to postpone the foreclosure sale as well as through substantive and procedural irregularities of the non-judicial foreclosure process, are undertaking a wrongful non-judicial foreclosure of the Subject Property pursuant to California *Civil Code* section 2924 *et seq.* Plaintiff now faces the loss of the Subject Property because of Defendants' actions or omissions of actions, as well as lost the opportunity to obtain a HAMP loan modification, and the opportunity to pursue other foreclosure prevention options.

### FIRST CAUSE OF ACTION
### (VIOLATION OF CAL. CIVIL CODE 2923.55)
### Against DEFENDANTS & DOES 1-20

34.     By this reference, Plaintiff incorporates each and every fact alleged in the

JTLegalGroup

1   preceding paragraphs above, as though fully set forth herein.

2       35.   California *Civil Code* section 2923.55 provides that, prior to the recording of a
3   Notice of Default, a beneficiary or authorized agent must contact the borrower via telephone
4   or in person to access the borrower's financial situation and explore options for the borrower
5   to avoid foreclosure. A beneficiary or authorized agent is excused from this requirement only
6   if the failure to contact the borrower occurred despite the due diligence of the beneficiary or
7   authorized agent. "Due diligence" means sending a letter by first class mail that includes a
8   toll free number made available by HUD and thereafter three (3) attempts to contact the
9   borrower by phone to the primary number on the file. A beneficiary or authorized agent
10  satisfies the telephone contact requirements if it determines, after attempting to contact the
11  borrower by telephone, that the primary and any secondary number have been disconnected.
12  If the beneficiary or authorized agent does not receive a response from the borrower within
13  two weeks after the telephone requirements have been met, the beneficiary or authorized
    agent must send a certified letter to the borrower, with return receipt requested.

14      36.   A beneficiary and authorized agent are excused from the requirements of
15  California *Civil Code* section 2923.55 described in the previous paragraph if: (1) the
16  borrower has voluntarily surrendered the property; (2) the borrower has contracted with an
17  organization whose primary business is advising borrowers on how to extend the foreclosure
18  process; or (3) the borrower is in bankruptcy.

19      37.   A beneficiary and authorized agents are required to refrain from recording a
20  Notice of Default and proceeding with the foreclosure process until thirty (30) days has
    passed from the time they made the contact with the borrower as described above or from the
21  time they satisfied the due diligence requirements as described above.

22      38.   None of the Defendants has contacted the borrower, or attempted to contact the
23  borrower as required under Cal. Civil Code section 2923.55, to discuss his financial situation
24  or options for avoiding foreclosure as required under California *Civil Code* section 2923.55.
25  Indeed, the paragraph inserted into the NOD purporting to that the Defendants had complied
26  is false.

27      39.   In violation of California *Civil Code* section 2923.55 Defendants caused to be

28

1    executed and recorded the NOD even though the required contacts with Plaintiff had not

2    been made.

3       40.    As a direct and foreseeable result of the Defendants' violations under

4    California *Civil Code* section 2923.55, Plaintiff has suffered and will continue to suffer

5    substantial irreparable harm, including but not limited to the loss of the Subject Property, the

6    opportunity to pursue foreclosure prevention alternatives she would have qualified for had

7    the Defendants contacted her to discuss alternatives to foreclosure prior to recording the

     Notice of Default, the cost and expense of the instant pending litigation, continuing

8    emotional distress, and other actual and consequential damages that will be proven on date of

9    trial.

10                        **SECOND CAUSE OF ACTION**

11              **(VIOLATION OF CIVIL CODE SECTION 2923.6)**
                       **Against DEFENDANTS and DOES 1-20**
12

13      41.    By this reference, Plaintiff incorporates each and every fact alleged in the

14   preceding paragraphs above, as though fully set forth herein.

15      42.    Pursuant to California *Civil Code* section 2923.6, the mortgage servicer, trustee,

16   beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a

17   trustee's sale until any of the following occurs: "(1) The mortgage servicer makes a written

18   determination that the borrower is not eligible for a first lien loan modification, and any appeal

19
     period pursuant to subdivision (d) has expired."
20

21      43.    Defendants did not make a written determination that Plaintiff was not eligible for

22   a first lien loan modification, and are in violation of California *Civil Code* section 2923.6, as

23   Defendants have a duty to maximize the net present value under their pooling and servicing

24   agreements, and a mortgage servicer acts in the best interests of all the parties to the loan pool

25   or investors in the pooling and servicing agreement if it agrees to or implements a loan

26   modification or workout plan.

27
        44.    As a direct and foreseeable result of the Defendants' violation under California
28



*Civil Code* sections 2923.6, Plaintiff has suffered and will continue to suffer substantial irreparable harm, including but not limited to the fact that Plaintiff now faces back dues and interest that has accrued to date, the loss of a permanent modification, the loss of the opportunity to pursue other foreclosure prevention options, the loss of the reinstatement amount he paid which included late fees and interest, the cost and expense of the instant pending litigation, and other actual and consequential damages that will be proven on date of trial.

### THIRD CAUSE OF ACTION

**(VIOLATION OF CIVIL CODE SECTION 2923.7)**
**Against DEFENDANTS & DOES 1-20**

45.   By this reference, Plaintiff incorporates each and every fact alleged in the preceding paragraphs above, as though fully set forth herein.

46.   California *Civil Code* section 2923.7 provides that upon the request of a foreclosure prevention alternative, the mortgage servicer "shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact." Despite Plaintiff's request for assistance with an alternative to foreclosure prevention, Plaintiff was not provided with a single point of contact who had been given the ability to actually help them with foreclosure alternatives.  Plaintiff had made numerous phone calls and left messages to the contact person given by SPS, named as Matt Enright.  However, Plaintiff has never received any calls back or any assistance from him.

47.   Plaintiff was never given a single point of contact that: (1) Communicated the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options; (2) Coordinated receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application; (3) Had

access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative; (4) Ensured that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any; (5) Had access to individuals with the ability and authority to stop foreclosure proceedings when necessary.

48.    As a direct and foreseeable result of the Defendants' violation under California *Civil Code* sections 2923.7, Plaintiff has suffered and will continue to suffer substantial irreparable harm, including but not limited to the fact that Plaintiff now faces back dues and interest that has accrued to date, the loss of a permanent modification, the loss of the opportunity to pursue other foreclosure prevention options, the loss of the reinstatement amount he paid which included late fees and interest, the cost and expense of the instant pending litigation, and other actual and consequential damages that will be proven on date of trial.

<u>FOURTH CAUSE OF ACTION</u>
**(DECLARATORY RELIEF PURSUANT TO CIVIL CODE SECTION 2924.12)**
**Against Defendants and DOES 1 through 20**

49.    By this reference, Plaintiff incorporates each and every fact alleged in the preceding paragraphs above, as though fully set forth herein.

50.    Pursuant to Cal. *Civil Code* section 2924.12 (a) (1), "If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17."

51.    Defendants are in material violation of Cal. *Civil Code* sections 2923.55, 2923.6, and 2923.7 as alleged herein. Thus, Plaintiff, the borrower of the subject loan, is able to bring an action for injunction relief to enjoin these violations.

52.    Pursuant to Cal. *Civil Code* section 2924.12 (a)(2), "Any injunction shall remain in place and any trustee's sale shall be enjoined until the court determines that the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent has corrected and remedied the violation or violations giving rise to the action for injunctive relief."

JTLegalGroup

53.   Pursuant to Cal. *Civil Code* section 2924.12 (i) A court may award a prevailing borrower reasonable attorney's fees and costs in an action brought pursuant to this section. A borrower shall be deemed to have prevailed for purposes of this subdivision if the borrower obtained injunctive relief or was awarded damages pursuant to this section.

**FIFTH CAUSE OF ACTION**
**(BREACH OF CONTRACT)**
**Against Defendants and DOES 1 through 20**

54.   By this reference, Plaintiff incorporates each and every fact alleged in the preceding paragraphs above, as though fully set forth herein.

55.   On or about April 25, 2007 to finance the Subject Property, Plaintiff obtained a loan from World Savings Bank, FSB ("WORLD SAVINGS") in the amount of $492,000.00. As evidence of the first lien mortgage loan, Plaintiff executed a promissory note ("Note"), and concurrently executed a Deed of Trust ("DOT") as security for the Note. The DOT was recorded on April 30, 2007, as Document Number 167211 in the Official Records of the County of Alameda Recorder's Office. The named Lender and Beneficiary in the Deed of Trust was WORLD SAVINGS. Attached hereto and incorporated herein by reference as **Exhibit A** is a true and correct copy of the DOT.

56.   Paragraph 26, 28 of the Deed of Trust had required the Defendant (and its assigns) to, in the event of Plaintiff's default, or any transfer of rights and interests by the borrower, give Plaintiff notice of Plaintiff's default and the Lender's intent to accelerate the loan, *prior* to acceleration. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.

57.   No such Acceleration Notice or Notice to Cure was received by the Plaintiff after her first missed payment.

58.   Plaintiff is informed and believe, and thereon alleges, that the Defendants failed to



13
COMPLAINT

1   abide by the agreed terms of the mortgage assigned to them.

2   59.   In breach of the terms of the deed of trust and in breach of the reinstated loan,

3   Defendants had moved forward with foreclosure despite failing to properly notice Plaintiff.

4   60.   Upon information and belief, and based thereon, Plaintiff alleges that Defendants

5   never intended on offering Plaintiff a real opportunity to modify their loan.

6   61.   Defendants never intended to cease the foreclosure proceedings as evidenced by

7   them moving forward with the sale, currently schedule for August 8, 2017, despite their letter

8   acknowledging Plaintiff issues with the loan modification process.

9   62.   Plaintiff has suffered extreme emotional distress due the actions and inactions of the

10  Defendants described above.  Defendants have abused their rights as a lender, have engaged in

11  unfair business practices, have breached several promises, as well as fiduciary duties to Plaintiff.

12  The attempted non-judicial foreclosure sale of the Subject Property is wrongful, and an example

13  of "dual lending practices," which is officially prohibited in the State of California.

14  63.   Defendants were aware that Plaintiff was relying on their representations that they

15  would not move forward with the non-judicial sale, yet they knowingly, maliciously, and in bad

16  faith, moved forward with the non-judicial foreclosure sale despite their representations to the

17  contrary without further notice to Plaintiff.

18  64.   Plaintiff is informed and believe that Defendants made or caused to be made these

19  false representations to Plaintiff to induce Plaintiff's reliance upon same, and to cause Plaintiff to

20  refrain from using any available means to protect Plaintiff's interest in the Subject Property.

21  Plaintiff reasonably relied upon Defendants' representations to their detriment.

22  65.   Plaintiff has, as a real, actual, and proximate result, suffered actual and

23  consequential damages from probable loss of the Property, as well as loss of the right to use and

24  enjoy of the Subject Property. As a direct and proximate cause of Plaintiff's detrimental reliance

25  on the Defendants' promise, Plaintiff incurred substantial injury, including but not limited to the

26  loss of a permanent modification, back dues and interest that has accrued to date, lost the

27  opportunity to pursue other foreclosure prevention options, the cost and expense of the instant

28

1   pending litigation, and other actual and consequential damages that will be proven on date of

2   trial.

3                           **SIXTH CAUSE OF ACTION**
4        (BREACH OF THE COVENENANT OF GOOD FAITH AND FAIR DEALING)
                      **Against Defendants and DOES 1 through 20**
5
6        66.    By this reference, Plaintiff incorporates each and every fact alleged in the preceding

7   paragraphs above, as though fully set forth herein.

8        67.    On or about April 25, 2007 to finance the Subject Property, Plaintiff obtained a loan

9   from World Savings Bank, FSB ("WORLD SAVINGS") in the amount of $492,000.00.  As

10  evidence of the first lien mortgage loan, Plaintiff executed a promissory note ("Note"), and

11  concurrently executed a Deed of Trust ("DOT") as security for the Note.  The DOT was recorded

12  on April 30, 2007, as Document Number 167211 in the Official Records of the County of
13
    Alameda Recorder's Office.  The named Lender and Beneficiary in the Deed of Trust was
14
15  WORLD SAVINGS.  Attached hereto and incorporated herein by reference as **Exhibit A** is a

16  true and correct copy of the DOT.

17       68.    Paragraph 26, 28 of the Deed of Trust had required the Defendant (and its assigns) to,

18  in the event of Plaintiff's default, give Plaintiff notice of Plaintiff's default and the Lender's

19  intent to accelerate the loan, *prior* to acceleration. The notice shall specify: (a) the default; (b) the
20
    action required to cure the default; (c) a date, not less than 30 days from the date the notice is
21
22  given to Borrower, by which the default must be cured; and (d) that failure to cure the default on

23  or before the date specified in the notice may result in acceleration of the sums secured by this

24  Security Instrument and sale of the Property.

25       69.    No such Acceleration Notice or Notice to Cure was received by the Plaintiff after

26  their first missed payment.

27       70.    Plaintiff is informed and believe, and thereon allege, that the Defendants failed to

28

JTLegalGroup

1    abide by the agreed terms of the mortgage assigned to them.

2       71.    In breach of the terms of the deed of trust and in breach of the reinstated loan,

3    Defendants had moved forward with foreclosure despite failing to properly notice Plaintiff.

4       72.    Upon information and belief, and based thereon, Plaintiff alleges that Defendants

5    never intended on offering Plaintiff a real opportunity to modify their loan.

6

7       73.    Defendants never intended to cease the foreclosure proceedings as evidenced by

8    them moving forward with the sale, currently schedule for August 8, 2017, despite their letter

9    acknowledging the loan modification process.

10      74.    Plaintiff has suffered extreme emotional distress due the actions and inactions of the

11   Defendants described above.  Defendants have abused their rights as a lender, have engaged in

12
     unfair business practices, have breached several promises, as well as fiduciary duties to Plaintiff.
13
     The attempted non-judicial foreclosure sale of the Subject Property is wrongful, and an example
14
     of "dual lending practices," which is officially prohibited in the State of California.
15

16      75.    Plaintiff has, as a real, actual, and proximate result, suffered actual and

17   consequential damages from probable loss of the Property, as well as loss of the right to use and

18   enjoy of the Subject Property. As a direct and proximate cause of Plaintiff's detrimental reliance

19   on the Defendants' promise, Plaintiff incurred substantial injury, including but not limited to the

20   loss of a permanent modification, back dues and interest that has accrued to date, lost the

21
     opportunity to pursue other foreclosure prevention options, the cost and expense of the instant
22
     pending litigation, and other actual and consequential damages that will be proven on date of
23
     trial.
24

25                          **SEVENTH CAUSE OF ACTION**
                                      **(NEGLIGENCE)**
26                          **Against DEFENDANTS & DOES 1-20**

27      76.    By this reference, Plaintiff incorporates each and every fact alleged in the preceding

28

JTLegalGroup

paragraphs above, as though fully set forth herein.

77.   Based on information and belief, Plaintiff alleges that under the Deed of Trust, Defendants had a specific duty to notice Plaintiff of Default and how to cure it, yet no such notice was sent to Plaintiff following their missed mortgage payment.

78.   Plaintiff further alleges that by failing to notify Plaintiff, as stated in the Deed of Trust, Defendants breached their duty to provide recourse and allow Plaintiff to retain the benefit agreed upon.

79.   But for the negligence in notifying Plaintiff of Default through a Notice of Default or other consequent writing as required by Paragraph 26 and 28 of the Deed of Trust, Plaintiff would not have been harmed.

80.   Plaintiff further alleges that by accepting a loan modification application, Defendant had a duty to review the loan modification documents fairly, diligently and without moving forward with a foreclosure sale.

81.   However, Defendants are moving forward with the sale despite not having complied with the Homeowner's Bill of Rights.

82.   Plaintiff has suffered extreme emotional distress due the actions and inactions of the Defendants described above.  Defendants have abused their rights as a lender, have engaged in unfair business practices, have breached several promises, as well as fiduciary duties to Plaintiff. The non-judicial foreclosure sale of the Subject Property was wrongful, and an example of "dual lending practices," which is officially prohibited in the State of California.

### EIGHTH CAUSE OF ACTION
#### (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)
#### Against ALL Defendants & DOES 1-20

83.   By this reference, Plaintiff incorporates each and every fact alleged in the preceding paragraphs above, as though fully set forth herein.

84.   Defendants are negligently moving forward with the trustee sale and have negligently refused to give Plaintiff a real opportunity at a loan modification agreement.

85.   Plaintiff has suffered extreme emotional distress due the actions and inactions of the Defendants described above.  Defendants have abused their rights as a lender, have engaged in unfair business practices, have breached several promises, as well as fiduciary duties to Plaintiff. Proceeding with the non-judicial foreclosure sale of the Subject Property is wrongful, and an example of "dual lending practices," which is officially prohibited in the State of California.

**NINTH CAUSE OF ACTION**
**(UNFAIR BUSINESS PRACTICES)**
**Against Defendants and DOES 1 through 20**

86.   By this reference, Plaintiff incorporates each and every fact alleged in the preceding paragraphs above, as though fully set forth herein.

87.   The Unfair Competition Law defines unfair competition to include any "unfair," "unlawful," or "fraudulent" business act or practice.  California Business and Professions Code §17200, *et seq.*  The Act also provides for injunctive relief and restitution for violations.

88.   By virtue of the acts and omissions of the defendants, they have engaged in unfair competition within the meaning of California Business and Professions Code §17200, thereby entitling Plaintiff to injunctive and restitutionary relief as provided by California Business and Professions Code §17203.

89.   The aforementioned acts were willful, oppressive, and malicious, in that the Defendants engaged in acts of unfair competition with the deliberate intent to injure Plaintiff. Plaintiff is therefore entitled to payment of damages in a sum sufficient to punish the Defendants and to set an example and deter such conduct in the future.

90.   As a direct and foreseeable result of the Defendants' violation of Business and

1   Professions Code §17200, Plaintiff has suffered and will continue to suffer substantial irreparable

2   harm.

3       91.    Plaintiff does not know the full extent of their damages, but believes the total

4   damages from all causes alleged above exceeds the jurisdictional amount and is increasing each

5   day.  When Plaintiff has ascertained more clearly the extent of her damages, she will seek

6   amendment in order to allege them.

7

8   ///

9   ///

10  ///

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

1    WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

2                  **AS TO ALL CAUSES OF ACTION**

3      (1)     General damages in a sum according to proof against all Defendants in excess

4              of $25,000;

5      (2)     Compensatory damages provided by law including, not limited to California *Civil*

6              *Code* § 3300;

7      (3)     For interest provided by law including, but not limited to California *Civil Code* §

8              3291 against all Defendants;

9      (4)     Consequential damages in an amount to be proven at trial;

10      (5)     Injunction prohibiting any further sale of Subject Property;

11      (6)     Equitable injunctive, and/or declaratory relief as the Court may deem just and

12              proper.

13      (7)     Restitution of profits that the Defendants have unfairly obtained as a result of loss

14              of income and interest;

15      (8)     Equitable injunctive, and/or declaratory relief as the Court may deem just and

16              proper.

17      (9)     For costs and expenses incurred in this action;

18      (10)    For such other and further relief in law and equity that the Court deems just and

19              proper.

20

21    DATED: July 31, 2017              **JT Legal Group, APC**

22

23                       By:    _Michael A_____

24                            Michael Avanesian, Esq.

                              Attorney for Plaintiff

25                            MARLENE JEAN MOSLEY

26

27

28

JT Legal Group

Exhibit A

RECORDING REQUESTED BY:
WORLD SAVINGS BANK

WHEN RECORDED MAIL TO:
WORLD SAVINGS BANK
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

LOAN NUMBER: 0045914199

NOTE AMOUNT: $492,000.00

RECORDING REQUESTED BY
TICOR TITLE COMPANY



2007167211    04/30/2007 08:30 AM
OFFICIAL RECORDS OF ALAMEDA COUNTY
PATRICK O'CONNELL
RECORDING FEE:    58.00

17   PGS

TA

µ 7

FOR RECORDER'S USE ONLY

## DEED OF TRUST

THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED. THE SECURED NOTE PROVIDES FOR MONTHLY PAYMENTS OF PRINCIPAL AND INTEREST.

THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS $615,000.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.

I.    DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST
    (A)  Security Instrument. This Deed of Trust, which is dated April 25, 2007, will be called the "Security Instrument."

    (B)  Borrower, MARLENE JEAN MOSLEY, AN UNMARRIED WOMAN sometimes will be called "Borrower" and sometimes simply "I" or "me."

    (C)  Lender, WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES, will be called "Lender." Lender is a FEDERAL SAVINGS BANK, which is organized and exists under the laws of the United States. Lender's address is 1901 Harrison Street, Oakland, CA 94612 .    202400907

003

LENDER'S USE ONLY

SD001A (2004-03-3)
DEFERRED INTEREST

CA

Page 1

0045914199

(D) **Note.** The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. $492,000.00, plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in regularly scheduled periodic payments as provided in the Note and to pay the debt in full by May 15, 2037 ("Maturity Date").

(E) **Property.** The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

(F) **Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

(G) **Person.** Any person, organization, governmental authority or other party will be called "Person."

(H) **Trustor, Beneficiary, Trustee.** Borrower is the "Trustor," Lender is the "Beneficiary" and **Golden West Savings Association Service Co., A California Corporation** is the "Trustee."

II.   **BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY**

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees ͟͟͟͟ed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that mi͟͟͟ ͟If I fail to:

(i)   pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii)   pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)   keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

III.   **DESCRIPTION OF THE PROPERTY**

I give Trustee rights in the Property described below:

(i)   The Property which is located at 2836 MYRTLE ST, OAKLAND, CA  94608-4525. The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)   All buildings and other improvements that are located on the Described Property;

SDO01B (2004-03-3)
DEFERRED INTEREST                                        Page 2                                        CA

Non-Order Search                                    Page 50 of 72                    Requested By: Susan Mariscal , Printed: 7/28/2017 11:14 AM
Doc: 2007-167211-TDD 04-30-2007

0045914199

(iii)   All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)   All rents or royalties and other income from the Described Property;

(v)   All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)   All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)   All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii)   All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)   All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x)   All of the amounts that I pay to Lender under Paragraph 2 below.

IV.   BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

COVENANTS

I promise and I agree with Lender as follows:

1.   BORROWER'S PROMISE TO PAY

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

2.   PAYMENTS FOR TAXES AND INSURANCE

(A)   Borrower's Obligations

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

SD001C (2004-03-3)                                                                                            CA

Non-Order Search                                 Page 51 of 72                    Requested By: Susan Mariscal , Printed: 7/26/2017 11:14 AM
Doc: 2007-167211 TDD 04-30-2007

0045914199

(B)    Escrow Accounts

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

Non-Order Search                                    Page 52 of 72                 Requested By: Susan Mariscal , Printed: 7/28/2017 11:14 AM
Doc: 2007-1672 11 TDD 04-30-2007

0045914199

3.    APPLICATION OF BORROWER'S PAYMENTS
Unless applicable law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument;

Third, to pay the amounts due to Lender under Paragraph 2 above;

Fourth, to pay interest due under the Secured Notes;

Fifth, to pay deferred interest due under the Secured Notes;

Sixth, to pay principal due under the Secured Notes;

Last, to pay late charges due under the Secured Notes.

4.    BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS
I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a lien. I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5.    BORROWER'S OBLIGATION TO MAINTAIN INSURANCE
At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

Non-Order Search                          Page 53 of 72              Requested By: Susan Mariscal , Printed: 7/29/2017 11:14 AM
Doc: 2007-167211 TDD 04-30-2007

0045914199

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender or the insurance company stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. I will notify Lender immediately of any offer to settle a claim I receive from the insurance company. I will immediately deliver any Proceeds I receive from any insurer or other persons to Lender. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of the outstanding balance of the Sums Secured, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any Proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those Proceeds will not be greater than the total amount of the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

6.   BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

SD001F (2004-03-3)                                                                                        CA

Page 6

Non-Order Search                                      Page 54 of 72                       Requested By: Susan Mariscal , Printed: 7/28/2017 11:14 AM
Doc: 2007-167211 TDD 04-30-2007

0045914199

7.    **LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY**

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (including but not limited to any manner of legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

8.    **LENDER'S RIGHT TO INSPECT THE PROPERTY**

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

9.    **AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY**

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other governmental taking of the Property. All of those proceeds will be paid to Lender. If I receive any such proceeds, I will immediately deliver them to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the Sums Secured have been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, Sums Secured will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds and settle the claim. Lender may then use the proceeds to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of the outstanding principal of the Secured Notes, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

SD001G (2004-03-3)                                           CA

Page 7

Non-Order Search                          Page 55 of 72              Requested By: Susan Mariscal , Printed: 7/28/2017 11:14 AM
Doc: 2007-167211 TDD 04-30-2007

0045914199

10.  **CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**

   (A)  **Borrower's Obligations**

   Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

   Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

   (B)  **Lender's Rights**

   Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the Sums Secured.

11.  **OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**

   Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

   Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

   Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

12.  **MAXIMUM LOAN CHARGES**

   If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the outstanding principal balance of the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

SD001H (2004-03-3)                                                                                              CA

0045914199

13.    LEGISLATION AFFECTING LENDER'S RIGHTS

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

14.    NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at 2836 MYRTLE ST, OAKLAND, CA 94608-4525. A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I.(C) above entitled, "Definitions of Words Used In This Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

15.    GOVERNING LAW; SEVERABILITY

**This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located.** In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

16.    BORROWER'S COPY

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

17.    LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (I) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by

Non-Order Search                                    Page 57 of 72                    Requested By: Susan Mariscal , Printed: 7/28/2017 11:14 AM
Doc: 2007-167211 TDO 04-30-2007

0045914199

Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

18.     INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS

An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include but are not limited to an action for breach of contract, fraud, concealment of a material fact, or for intentional or negligent acts. I assign these rights, and any and all proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to the Sum Secured and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment. I will notify Lender immediately if I believe I have the right to bring any such legal action against any persons, and will notify Lender immediately if I assert any claim or demand against or commence any legal action against any such person. If I receive any proceeds from any persons besides Lender in connection with any such claim, demand or legal action, I will immediately deliver such proceeds to Lender.

19.     CLERICAL ERRORS

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to execute such documentation as Lender deems necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

20.     LOST, STOLEN OR MUTILATED DOCUMENTS

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

21.     WAIVER OF STATUTE OF LIMITATIONS

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

22.     CAPTIONS

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

23.     MODIFICATION

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

24.     CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

(A)     If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

SD001J (2004-03-3)                                                                                                              CA

Non-Order Search
Doc: 2007-167211 TCD 04-30-2007

Requested By: Susan Mariscal , Printed: 7/28/2017 11:14 AM

0045914199

**(B)**     The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of Incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

**(C)**     If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a **master** or **blanket** policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such master or blanket policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such **master** or **blanket** policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me. If I receive any such proceeds, I will immediately deliver them to Lender or otherwise apply them as set forth above.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

**(D)**     I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the master or blanket hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

25.    **FUTURE ADVANCES**
At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

SD001K (2004-03-3)                                                                                                           CA

0045914199

26.    AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

(i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

(ii)    Lender approves the creditworthiness of the transferee in writing;

(iii)    transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

(iv)    an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the then outstanding balance of Principal and interest under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

(v)    the transferee executes an assumption agreement which is satisfactory to Lender. Such assumption agreement may provide, if required by Lender, that the transferee open a deposit account with Lender or with a bank or other depository institution approved by Lender, to facilitate direct payments if direct payments are required in the Note.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

27.    SUBSTITUTION OF TRUSTEE

I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.

Non-Order Search                                          Page 60 of 72                    Requested By: Susan Mariscal , Printed: 7/26/2017 11:14 AM
Doc: 2007-167211 TCD 04-30-2007

0045914199

28.   RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each regularly scheduled payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, Lender may exercise the power of sale, take action to have the Property sold under applicable law, and invoke such other remedies as may be permitted under any applicable law.

Lender does not have to give me notice of a Breach of Duty. If Lender does not make a demand for full payment of the Sums Secured upon a Breach of Duty, Lender may make a demand for full payment of the Sums Secured upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

The sale of the Property may be postponed by or at the direction of Lender. If the Property is sold, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

29.   RECONVEYANCE

Upon payment of all Sums Secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all Secured Notes to Trustee. Trustee shall reconvey the Property without warranty to Borrower. Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

30.   STATEMENT OF OBLIGATION

Lender may collect a fee of $60.00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

SD001M (2004-00-3)

Page 13

CA

0045914199

31.    ( X )   QUICK QUALIFYING LOAN PROGRAM

I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) if I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes.

32.    ( X )   OWNER OCCUPANCY

Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that: (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes.

( X )   VALUE INDICATES THAT THE PARAGRAPH APPLIES.

THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.

SD001N (2004-03-3)                                                                          CA

Non-Order Search                          Page 62 of 72                    Requested By: Susan Monscal , Printed: 7/23/2017 11:14 AM
Doc: 2007-167211 TDD 04-30-2007

0045914199

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

_____     (Seal)
MARLENE  JEAN  MOSLEY

ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT

SD001 (2004-03-1)          |AF1 (2004-03-1)|                    Page 15                              CA
                           [B01 (2004-03-1)|

WORLD SAVINGS BANK, FSB

# E X H I B I T "A"
## LEGAL DESCRIPTION

LOAN NO. 0045914199

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF ALAMEDA STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

**LEGAL DESCRIPTION**

**EXHIBIT "A"**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF OAKLAND, COUNTY OF ALAMEDA, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

LOT 8, BLOCK C, THE GOLDEN GATE HOMESTEAD, FILED JULY 13, 1868, BOOK 30 OF DEEDS, PAGE 839, ALAMEDA COUNTY RECORDS.

APN: 005-0452-016

SD001 (2003-03-2) [GF430A1]                     Page 16 of 16                          CA

Exhibit B

Recording requested by: ANO

2017078954    04/06/2017 12:37 PM
OFFICIAL RECORDS OF ALAMEDA COUNTY
STEVE MANNING
RECORDING FEE:      34.00

4      PGS

When recorded mail to:
NORTHWEST TRUSTEE SERVICES, INC.
2121 Alton Parkway, Suite 110
Irvine, CA 92606
**APN 005-0452-016**

File No. 7023.118338
Property:2836 Myrtle Street Oakland, CA 94608

Title Order No. 8698282
MIN No.

## IMPORTANT NOTICE
### NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

*ATTENTION RECORDER*: THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY IS APPLICABLE TO THE
NOTICE PROVIDED TO THE TRUSTOR ONLY.

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
· 注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION. You
may have the legal right to bring your account in good standing by paying all of your past due payments plus
permitted costs and expenses within the time permitted by law for reinstatement of your account, which is
normally five business days prior to the date set for the sale of your property.  No sale date may be set until
approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on
this notice).  This amount is **$10,562.67** as of **04/04/2017**, and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes)
required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes
on the property, provide insurance on the property, or pay other obligations as required in the note and deed of
trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in
good standing.  In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you
provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire
amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full
payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you
and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted
(which may not be earlier than the three-month period stated above) to, among other things, (1) provide additional
time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments
in order to cure your default; or both (1) and (2).

TS No.:  7023.118336
Notice of Default and Election to  Sell Under Deed of Trust

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

> Wells Fargo Bank, N.A., successor by merger to Wachovia Mortgage, FSB,
> formerly known as World Savings Bank, FSB
> C/O Northwest Trustee Services, Inc.
> 2121 Alton Parkway, Suite 110, Irvine, CA 92606
> Telephone (714) 277-4888
> Reinstatement and Pay-Off Request Line (866) 387-NWTS

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.       Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN:   That the undersigned is either the original Trustee, the duly appointed substituted trustee or acting as agent for the trustee or beneficiary under a Deed of Trust dated 04/25/2007, executed by **Marlene Jean Mosley, an unmarried woman,** as Trustor(s), to secure certain obligations in favor of **World Savings Bank, FSB, its successors and/or assignees,** as Beneficiary, recorded 04/30/2007, as Book No. ,   Page No. ,   and Instrument No. **2007167211,**  of Official Records in the Office of the Recorder of ALAMEDA County, California, describing land therein as **more fully described in said Deed of Trust.**

Said obligations including (1) NOTE(S) FOR THE ORIGINAL sum of  **$492,000.00;**  that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

**The monthly installment of principal and interest which became due on 11/01/2016, and all subsequent installments, together with late charges as set forth in said Note and Deed of Trust, advances, assessments and attorney fees. Nothing in this notice shall be construed as a waiver of any fees owing to the beneficiary under the deed of trust, pursuant to the terms of the loan documents.**

**A copy of CA Civil Code Section §2923.55 or 2923.5 declaration is attached hereto and incorporated herein by reference.**

TS No.:  7023.118336
Notice of Default and Election to  Sell Under Deed of Trust

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Dated:  04/04/2017          **Northwest Trustee Services, Inc., as Trustee**

By:  _____

Authorized Signatory, Sinuon Seng

## THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

If you have received a discharge of the debt referenced herein in a bankruptcy proceeding, this notice does not constitute an attempt to collect a debt or to impose personal liability for such obligation.  However, a secured party retains rights under its security instrument, including the right to foreclose its lien.

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

# DECLARATION OF COMPLIANCE

*(California Civil Code Section 2923.55(c))*

Borrower(s): MARLENE JEAN MOSLEY

Property Address: 2836 MYRTLE ST
                  OAKLAND CA 94608-4525

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares that:

1. ☐ The mortgage servicer has contacted the borrower pursuant to California Civil Code §2923.55(b)(2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since the initial contact was made.

2. ☒ The mortgage servicer has exercised due diligence to contact the borrower pursuant to California Civil Code §2923.55(f) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

3. ☐ No contact was required by the mortgage servicer because the individual(s) identified above did not meet the definition of "borrower" pursuant to subdivision (c) of California Civil Code §2920.5.

4. ☐ The requirements of California Civil Code §2923.55 do not apply because the loan is not secured by a first lien mortgage or deed of trust on "owner-occupied" residential real property as defined by California Civil Code §2924.15(a).

I certify that this declaration is accurate, complete and supported by competent and reliable evidence which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

Wells Fargo Bank, N.A.

| | |
|---|---|
| By: | |
| Name: | Cristian Gomez |
| Title: | VP Loan Documentation |
| Date: | 8/21/2015 |

053_CA_V3

1  Michael Avanesian, Esq. (SBN 278685)
   Vartkes Artinian, Esq. (SBN 304009)
2  **JT LEGAL GROUP, APC.**
   801 N. Brand Blvd., Ste. 1130
3  Glendale, CA 91203
   Telephone: 818.745.1461
4  E-Fax: 818-330-5265

5  **Attorneys for Plaintiff**
   MARLENE JEAN MOSLEY

6

7              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

8                        **COUNTY OF ALAMEDA**

9
   MARLENE JEAN MOSLEY, *an*               CASE NO.:  RG17869736
10 *individual,*
                                           **OBJECTION TO DECLARATION OF**
11              Plaintiff,                  **NON-MONETARY STATUS PURSUANT**
                                           **TO** *CAL. CIV. CODE* § 2924L
12 v.

13 WELLS FARGO BANK, N.A.;                 Action Filed: July 13, 2017
   NORTHWEST TRUSTEE SERVICES,
14 INC.; and DOES 1 through 20, inclusive,

15
                Defendants.
16

17
       Plaintiff, MARLENE JEAN MOSLEY, an individual, hereby objects to Defendant
18
   NORTHWEST TRUSTEE SERVICES INC.'S (hereinafter referred to as "NORTHWEST")
19
   Declaration of Non-Monetary Status, pursuant to *Cal. Civ. Code* § 2924l(c), as follows:
20
       NORTHWEST contends in its Declaration of Non-Monetary Status that Plaintiff does not
21
   specify any acts of NORTHWEST that would imply liability on its part. However, NORTHWEST
22
   has been an active entity in facilitating the sale of Plaintiff's home.
23
       Under California law, a trustee under a deed of trust is a common agent for all parties.
24
   (Miller & Starr, California Real Estate (2000 3rd Ed.) ¶ 10:4, p. 21, footnote 14).   An agent has
25
   the duty to use reasonable skill and diligence in performing its duties under the deed of trust.
26
   (Kerivan v. Title Ins. and Trust Co. (1983) 147 Cal.App.3d 225, 229).   Indeed, if a trustee violates
27
   this duty, it can be held liable for any loss which its principal may sustain as the result of the
28

                                         -1-

1   trustee's negligence. (*Id.*). Moreover, a trustee or mortgagee may be held liable to the trustor for

2   damages resulting from an illegal, fraudulent or willfully oppressive foreclosure sale. (*Munger v.*

3   *Moore* (1970) 11 Cal.App.3d 1, 7).

4        On or about April 6, 2017, NORTHWEST, alleging to be the Trustee either under the

5   original Deed of Trust, the duly appointed substituted Trustee, or acting as agent for the Trustee

6   or Beneficiary under the Deed of Trust dated April 25, 2007, executed and caused to be recorded

7   a Notice of Default and Election to Sell Under Deed of Trust ("NOD") against the subject property.

8   The NOD was recorded as Document Number 078954, in the Official Recorder's Office Records.

9   (Complaint ¶ 19.)

10        For the above reasons, Plaintiff objects to Defendant NORTHWEST'S declaration of non-

11   monetary status.

12

13

    DATED: August 18, 2017               **JT LEGAL GROUP, APC**

14

15                     By:   *Michael Ava*

16                          Michael Avanesian, Esq.
                       Attorney for Plaintiff

17                          MARLENE JEAN MOSLEY

18

19

20

21

22

23

24

25

26

27

28

OBJECTION TO DECLARATION OF NON-MONETARY STATUS PURSUANT TO
*CAL. CIV. CODE* § 2924L

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action.

On August 18, 2017, I served the foregoing document described as **OBJECTION TO DECLARATION OF NON-MONETARY STATUS** on all interested parties in this action by placing a true copy thereof enclosed in sealed envelopes addressed as stated on the attached service list:

[X]   **BY MAIL** - I deposited such envelope in the mail at Glendale, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Glendale, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

[ ]   BY PERSONAL SERVICE - I personally served the attached service list

[ ]   VIA FACSIMILE - I faxed said document, to the offices(s) of the addressee(s) shown above, and the transmission was reported as complete and without error.

[ ]   BY ELECTRONIC TRANSMISSION - I transmitted a PDF version of this document by electronic mail to the party(s) identified on the attached service list using the e-mail address (es) indicated.

[ ]   BY OVERNIGHT DELIVERY - I deposited such envelope for collection and delivery by (FED EX) with delivery fees paid or provided for in accordance with ordinary business practices. I am "readily familiar" with the firm's practice of collection and processing packages for overnight delivery by (FED EX). They are deposited with a facility regularly maintained by (FED EX) for receipt on the same day in the ordinary course of business.

[X]   (State)   I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[ ]   (Federal)   I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on August 18, 2017 at Glendale, California.

Blanca Silva

-1-
PROOF OF SERVICE

1    <u>SERVICE LIST</u>

2    Marlene Jean Mosley v. Wells Fargo Bank, N.A., et al
     Alameda County Superior Court: RG17869736

3

| | |
|---|---|
| 4   Mark J. Sarni, Esq. (SBN 164364)<br>msarni@rcolegal.com<br>5   RCO LEGAL, P.S.<br>2121 Alton Pkwy, Ste. 110<br>Tel: ((714) 277-1565<br>6   Fax: (714) 277-4899 | *Attorneys for Defendant Northwest Trustee*<br>*Services, Inc.* |
| 7   CSC Lawyers Incorporating Service<br>2710 Gateway Oaks Drive, Ste. 150N<br>8   Sacramento, CA 95833 | *Agent for Service of Process for Defendant*<br>*Wells Fargo Bank, N.A.* |

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

**JTLegalGroup**™
A LAW CORPORATION
801 N. Brand Blvd., Suite 1130
Glendale, CA 91203

NEOPOST
08/18/2017
US POSTAGE $000.46⁰
FIRST-CLASS MAIL
ZIP 91203
041L10403253

SANTA CLARITA
CA 913
19 AUG
PM 4

Csc Lawyers Incorporating Service
2710 Gateway Oaks Drive Ste. 150N
Sacramento, CA 95833

95833-350559